**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JENNIFER L. E.,**

      **Plaintiff,**

      **v.**                                  **CIV No. 1:24-cv-01015-KRS**

**FRANK BISIGNANO,
Commissioner of the Social Security Administration,**

      **Defendant.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER is before the Court upon Plaintiff Jennifer L. E.'s ("Plaintiff") Opposed Motion to Reverse and Remand to Agency ("Motion"), (Doc. 13), dated February 3, 2025, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383. The Commissioner responded to Plaintiff's Motion on March 26, 2025, (Doc. 19), and Plaintiff filed a reply on April 9, 2025, (Doc. 20). Plaintiff subsequently filed a Notice of Completion of Briefing. (Doc. 21). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has meticulously reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in his decision and will therefore **GRANT** Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this opinion.

I.      **PROCEDURAL POSTURE**

On January 29, 2021, Plaintiff filed an initial application for SSI with an alleged onset date

of January 1, 2018, at 34 years of age. (*See* Administrative Record ("AR") at 61).[1] Plaintiff alleged

she was disabled due to "[o]steoarthrosis and [a]llied [d]isorders," lumbar spinal stenosis, bulging

disc, and degenerative disc disorder.  (*Id.* at 61-62, 71). In Plaintiff's May 25, 2021, Adult Function

Report, she reported that she could not stand or sit for an extended amount of time, bend over

without being in pain, nor could she lift anything "heavy." (*Id.* at 218).  She further reported that

her conditions affected her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs,

remember, and complete tasks. (*Id.* at 223).

Plaintiff's application was denied at the initial level on September 10, 2021, (*id.* at 62-69,

89-93), and upon reconsideration on February 28, 2023, (*id.* at 70-85, 98-102). Plaintiff requested

a hearing on April 25, 2023, (*id.* at 108), which ALJ Christopher Hunt ("ALJ Hunt" or the "ALJ")

conducted on November 16, 2023, (*id.* at 10, 36-60, 158). Plaintiff was represented by counsel and

testified at the hearing (*id.* at 40-48), as did Vocational Expert Marsha Storozyszyn ("VE") (*id.* at

48-59). On January 29, 2024, the ALJ issued an unfavorable decision. (AR 7-24). On August 2,

2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

Commissioner's final decision. (*Id.* 1–3). On October 7, 2024, Plaintiff filed her Complaint in this

case seeking review of the Commissioner's decision. (Doc. 1).

## II.    LEGAL STANDARDS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether

substantial evidence supports the factual findings and whether the ALJ applied the correct legal

standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d

---

[1] Document 8 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

**B.    Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982

4

WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

The claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.    THE ALJ'S DETERMINATION

On January 29, 2024, ALJ Hunt issued a decision denying Plaintiff's application for SSI. (AR 7-28). In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. (*Id.* at 11-24). First, ALJ Hunt found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 29, 2021. (*Id.* at 12). The ALJ then found at step two that Plaintiff suffered from the following severe impairments: "obesity; degenerative disc disease of the lumbar spine, status post two lumbar surgeries; and degenerative disc disease of the cervical spine." (*Id.*). ALJ Hunt further found that Plaintiff had the following non-severe impairments: "major depressive disorder and generalized anxiety disorder." (*Id.* at 13). The ALJ did not address whether he found any physical impairments to be non-severe.  (*See generally id.* at 7-28). At step three, ALJ Hunt concluded that Plaintiff did "not have an impairment or combination of impairments that" met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 1483).

Moving to the next step, the ALJ reviewed the evidence of record, including medical

opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*Id.* at 16-22). Having done so, the ALJ concluded that for the relevant period, Plaintiff possessed an RFC:

> to perform light work as defined in 20 CFR 416.967(a) except as follows: [she] can lift no more than 20 pounds occasionally and 10 pounds frequently. [She] is able to sit for 6 hours in an eight-hour day and stand and/or walk for 3 hours in an eight-hour day. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She should not climb ladders, ropes, or scaffolds or be exposed to unprotected heights.

(*Id.* at 16).

In determining the RFC, the ALJ considered Plaintiff's testimony regarding her symptoms, including "back and neck pain when bending over, standing, or moving" and her pain management for two back surgeries. (*Id.* at 17). Plaintiff further testified that she could sit or stand for about 15 to 30 minutes before incurring pain. (*Id.*) The ALJ's decision does not discuss Plaintiff's Function Reports, in which Plaintiff described limitations in her ability to perform daily activities. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's statements regarding "the intensity, persistence, and limiting effects of [the] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*)

The ALJ then discussed each of the severe impairments determined in step two and their impact on the ALJ's RFC finding, as well as the opinions of State Agency physicians, Randal Reid, M.D. ("Dr. Reid"), from the initial opinion, and Jeffrey Wheeler, M.D. ("Dr. Wheeler"), on reconsideration, as well as Plaintiff's treating pain management physician Mark Grossetete, M.D. ("Dr. Grossetete"), surgeon Urvij Modhia, M.D., pain management physician James Gonzales, M.D. ("Dr. Gonzales"), and Erika Garcia, M.D. ("Dr. Garcia"). (*Id.* at 17-22). ALJ Hunt noted Plaintiff's "complaints of back pain" which were confirmed by medical imaging and subsequent

6

lumbar surgeries. (*Id.*) ALJ Hunt concluded that based on the evidence of degenerative disc disease of the cervical and lumbar spine, Plaintiff was limited to standing and/or walking three hours in an eight-hour day. (*Id.* at 20). Moreover, her "symptoms of pain" supported the finding that she could occasionally climb ramps and stairs. (*Id.*) The ALJ also found Dr. Reid's opinion not persuasive because the medical record supported greater exertional and postural limitations. (*Id.* at 21). He further determined Dr. Wheeler's opinion was generally persuasive with respect to exertional and postural limitations, and some environmental limitations. (*Id.* at 22).

Next, the ALJ found Plaintiff did not have past relevant work. (*Id.* at 22). At step five, the ALJ asked the VE if any occupations exist which could be performed by an individual with the same "age, education, work experience, and [RFC]" as Plaintiff. (*Id.*) The VE testified that, considering those factors, an individual could perform the requirements of document preparer, addresser, surveillance system monitor, or customer service representative. (*Id.* at 22-23). The VE further testified that only the jobs of surveillance system monitor and customer service representative would remain if an individual's RFC "required a sit and stand option . . . every 30 minutes but remain on task." (*Id.* at 22). The ALJ then determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 24). Accordingly, Plaintiff was deemed not disabled at any time since she filed her SSI application on January 29, 2021. (*Id.*)

The ALJ's decision at no point discusses chronic pain syndrome ("CPS") and the limiting effects identified by Plaintiff or her treating physicians Dr. Grossetete, Dr. Gonzales, and Mary Kenyon, CNP. However, in his decision, ALJ Hunt makes a singular notation that Dr. Grossetete diagnosed Plaintiff with "chronic pain" on February 11, 2021. (*Id.* at 18). The decision also discusses intermittently the pain that Plaintiff reported experiencing associated with the severe

impairments. The decision also noted Plaintiff's "pain" in particular, states that it is associated with cervical and lumbar degenerative disc disease, and states a portion of Plaintiff's RFC limitations are due, in part, to the "symptoms of pain" she experiences. (*Id.* at 20) ("Further, symptoms of pain and reduced range of motion support that the claimant can occasionally climb ramps and stairs. . . . Due to back and neck pain, the claimant is limited to occasional stooping, kneeling, crouching, and crawling as well.")

## IV.    DISCUSSION

Plaintiff asserts that ALJ Hunt failed to evaluate her medically determinable impairment of CPS, and the effects of this impairment, when assessing her RFC. Second, the ALJ failed to consider certain testimony, medical evidence, and medical opinions in formulating Plaintiff's RFC as it pertained to CPS. The Court begins by considering Plaintiff's first argument to determine whether reversible error occurred at any step of the analysis due to the ALJ's alleged failure to evaluate Plaintiff's CPS or its effects.

### A.    Step Two Consideration of Plaintiff's CPS

At step two of the review process, an ALJ must determine whether a claimant has a severe medically determinable physical or mental impairment or combination of impairments that is severe. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). If the ALJ finds that a claimant has no severe impairment, he will find that the claimant is not disabled and deny benefits. *Id.* But if the ALJ finds at least one severe impairment, he must proceed to step three analysis. *Id.* Therefore, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Id.*

Plaintiff argues that the ALJ's decision contains legal error at step two of the review

8

process because the ALJ failed to consider: (1) whether Plaintiff's diagnosed CPS was a severe or non-severe medical impairment. In response, Defendant argues that there is no reversable error because the ALJ concluded Plaintiff had one severe physical impairment.

Here, the ALJ determined at step two that Plaintiff had severe impairments of obesity, degenerative disc disease of the lumbar spine, status post two lumbar surgeries, and degenerative disc disease of the cervical spine. Accordingly, because the ALJ found that Plaintiff had at least one severe medically determinable physical impairment and therefore proceeded to step three, it is not reversible error that the ALJ failed to discuss Plaintiff's CPS. The Court must then determine if the ALJ properly formulated Plaintiff's RFC.

**B.      Consideration of Plaintiff's CPS in Formulating RFC**

Plaintiff next argues that the ALJ committed reversible legal error when he failed to consider her CPS while formulating the RFC. (Doc. 13 at 13-15). Specifically, Plaintiff argues that considering CPS as its own impairment might have changed the ALJ's perception of Plaintiff's statements about the intensity, persistence, and limiting effects of her pain on her daily activities and/or the RFC determination. (*Id.*)

After determining that a claimant has a severe medically determinable impairment or combination of impairments at step two, and subsequently determining that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 at step three, the ALJ must determine the claimant's physical and mental RFC. A claimant's RFC "is the most [she] can do despite [her] limitations," and "is based on all the relevant evidence, including a claimant's credible allegations of pain." *Rivera v. Comm'r, Soc. Sec. Admin.*, No. 22-1026, 2022 U.S. App. LEXIS 33008, 2022 WL 17333068, at *5 (10th Cir. Nov. 30, 2022) (citing 20 C.F.R. §§ 404.1545,

404.1529). The ALJ must consider both severe and non-severe impairments in formulating the RFC. *Holgersen v. Comm'r, Soc. Sec. Admin.*, No. 20-CV-00668-MSK, 2021 U.S. Dist. LEXIS 128945, 2021 WL 2910655, at *5 (D. Colo. July 12, 2021). The assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). When evaluating a claimant's symptoms, including pain,

> [t]here must be objective medical evidence . . . that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a).

Here, the ALJ's decision discusses Plaintiff's reported pain, references a single diagnosis of CPS, and cites "pain" as a partial basis for some of the RFC limitations. Defendant argues the ALJ's references to "pain" demonstrates that the ALJ considered all of Plaintiff's pain symptoms when determining her RFC. (Doc. 19 at 13-14). Defendant also argues that the ALJ properly assessed Plaintiff's limitations and not simply her diagnoses, such as CPS. (*Id.* at 10). Simply put, Defendant contends all of Plaintiff's pain symptoms caused by CPS were accounted for when analyzing Plaintiff's cervical and lumbar spine degenerative disc disease diagnoses. Under this contention, the ALJ fully accounted for the functional consequences of CPS—as required—even though it was not addressed.

The Court rejects Defendant's argument that Plaintiff's CPS was adequately considered. While the ALJ clearly considered at least some of Plaintiff's "pain" and/or "chronic pain" when formulating the RFC, "consideration of a diagnosis is not the same as consideration of a symptom." *See* 20 C.F.R. § 404.1529(a). As Plaintiff notes, CPS is more than just the chronic pain caused by

an initial injury. (Doc. 13 at 13-14). CPS is itself "capable of producing disabling pain." *Bakalarski v. Apfel*, No. 97-1107, 1997 U.S. App. LEXIS 34055, at * 6, 1997 WL 748653, at *2 (10th Cir. Dec. 3, 1997). Beyond this, CPS has both physical and psychological components that are not neatly separable, in which "[p]ain merges into and becomes a part of the mental and psychological responses that produce functional impairments." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995). Thus, had Plaintiff's CPS been considered its own impairment, the ALJ might reasonably have altered his perception of Plaintiff's physical and mental limitations when formulating the RFC. *See Martinez v. Kijakazi*, No. 1:20-cv-00991-WJ-KRS, 2022 U.S. Dist. LEXIS 14140, 2022 WL 214539 (D.N.M. Jan. 25, 2022) (report and recommendation) (where ALJ considered subjective symptom evidence of the plaintiff's chronic pain, but failed to discuss claimant's chronic pain syndrome anywhere in the decision, the court "cannot say that the ALJ properly evaluated [p]laintiff's chronic pain condition as one 'that could reasonably be expected to produce' the associated pain that she alleges as required under SSA policy"). *Howard v. Berryhill*, No. 17-cv-00276-RBJ, 2017 U.S. Dist. LEXIS 190175, 2017 WL 5507961, at *6 n.4 (D. Colo. Nov. 17, 2017) (declining to interpret "passing references to 'pain'" in the ALJ decision "as the ALJ's consideration of [plaintiff's] chronic pain syndrome"); S*cates v. Astrue*, 2012 U.S. Dist. LEXIS 183505, 2012 WL 13080131, *5 (D.N.M. 2012) (ALJ failed to properly consider diagnoses of somatoform disorder and pain disorder in formulating plaintiff's RFC); *Sotelo v. Astrue*, 2011 WL 13289791, *6 (D.N.M. 2011) (remanding for the ALJ's failure to explain why he did not consider the effect of plaintiff's diagnosis of somatoform disorder and chronic pain syndrome when assessing plaintiff's credibility).

The ALJ's lack of discussion as to Plaintiff's diagnosed CPS leaves the Court unable to determine whether or how its physical and mental aspects were actually considered, as required

by the regulations. *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon[.]"). Therefore, the Court finds that the ALJ committed legal error.

If Plaintiff's CPS were fully considered as its own impairment when formulating the RFC, a reasonable fact finder could have determined that greater physical or mental limitations were appropriate, potentially leading to a finding that there are not a significant number of jobs in the national economy which the Plaintiff can perform. See 20 C.F.R. §§ 404.1566, 416.966. Accordingly, the Court finds that this legal error is not harmless, and that the ALJ's decision must be reversed and remanded.

### C. Remaining Issues

Because Plaintiff's CPS may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Plaintiff's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (reversing and remanding after concluding the ALJ did not apply the correct legal standards and declining to consider remaining issues raised by the claimant "because they may be affected by the ALJ's treatment of this case on remand"). The Court encourages the parties, the ALJ, and the Commissioner on remand to consider fully and anew the evidence and all issues raised. *See Kepler v. Chater*, 68 F.3d 387, 391-392 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

### V. CONCLUSION

For the reasons set forth above, Plaintiff's Opposed Motion to Reverse and Remand to Agency, (Doc. 13), is **GRANTED**, and this matter is **REMANDED** for further proceedings

consistent with this decision.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**